PACIFIC ALASKA CONTRACTORS,
Inc.,

v.

UNITED STATES.
No. 349-56.

United States Court of Claims.
Jan. 15, 1958.

James V. Ramsdell, Tacoma, Wash., for plaintiff. O. P. Easterwood, Jr., McNutt, Dudley & Easterwood, Washington, D. C., and Eisenhower, Hunter & Ramsdell, Tacoma, Wash., were on the briefs.

Mary K. Fagan, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

Plaintiff sues for breach of a contract it alleges it entered into with defendant to construct certain fuel storage tanks, pumphouses, fuel lines, electrical distribution system, etc., at Elmendorf Air Force Base, Anchorage, Alaska.

Defendant has filed a motion for summary judgment on the ground that no contract between the parties was consummated.

The facts are not in dispute. Defendant advertised for bids for the construction of items listed in alternate schedules A, B, C, D and E. Item 1 in each schedule was a certain number of fuel storage tanks. The number of the tanks in each schedule was different; otherwise item 1 in each schedule was the same. Item 2 was for a booster pumphouse and fuel lines; item 3 was for an electrical distribution system; and item 4 was for rerouting fuel transfer lines. The quantities in items 2 to 4 varied in proportion to the number of tanks in item 1.

The invitation for bids stated that an award would be made under only one schedule, and that items 1 through 3 would be awarded on one contract, with the right reserved to award also item 4, if the defendant so decided.

Plaintiff bid on all five schedules and was low bidder on each. Its bid was to remain open for sixty days after the opening on December 9, 1955.

Of all the work to be done at the Air Force Base, the work bid on by plaintiff was the last to be done, and the extent to which it could be done depended upon the amount of money that remained after other work had been completed. So, when it developed that bids on work having greater priority exceeded defendant's estimate, it was determined that item 1 of plaintiff's project could not then be awarded, but it was decided to award items 2, 3 and 4, reserving the right to award item 1 within the sixty-day period of plaintiff's offer, if sufficient money was on hand. Defendant, accordingly, wired plaintiff as follows:

"You are hereby notified that schedule A items 2, 3 and alternate

item 4 of your bid dated 9 December 1955 in response to invitation eng-95–507–56–9 revised by addenda 1 and 2 for construction of underground jet fuel and avgas systems at Elmendorf AFB Alaska in total amount of $671,421 for completion ready for use not later than 1 August 1957 is accepted. The government reserves the right to award either item 1 of schedule A or item 1 of schedule C or item 1 of schedule E within 60 calendar days of bid date. The government further reserves the right to substitute piping for 8 tanks, item 2 of schedule E or 6 tanks, item 2 of schedule C in lieu of piping for 4 tanks, item 2 of schedule A, and to substitute item 3 of schedule C or item 3 of schedule E for item 3 of schedule A at bid price within 60 calendar days of bid date. This award further contains the proviso that no work shall commence on alternate item 4 until excavation is completed on runway and notice to proceed is issued by contracting officer for this work. Your contract will be numbered DA–95–507–ENG–886 and will be dated 30 December 1955. Copies of the contract and formal notice of award with complete instructions for executing bonds will be forwarded shortly for signature. Notice to proceed will not be given until contract is signed and satisfactory bonds have been furnished. Telegraphic acknowledgment of this notice is requested."

The award, therefore, was not responsive to plaintiff's bid. As stated, defendant had said in its invitation for bids that one contract would be awarded for items 1, 2, and 3, and possibly 4, and plaintiff had bid on all four items, with the understanding that one contract would be awarded covering at least the first three items.

Since the award did not conform to plaintiff's bid, plaintiff protested and demanded a contract covering at least the first three items. Defendant replied that it could let a contract only for items 2, 3 and 4.

Plaintiff continued to protest in conversations over the telephone, and defendant continued to refuse to let a contract covering item 1, which, by the way, amounted to nearly twice the sum of the other items. Finally, plaintiff on January 4, 1956 wired defendant as follows:

"Reference to telephone conversation Jan 4 with Col Haseman relative to award of contract DA886 inasmuch as award as now made is not in conformance with bid schedule suggest government request option of 40 days additional time in which to award item one of either schedule 'A' and schedule 'C' or schedule 'E' acknowledge air upon receipt of tis [sic] correction we will acknowledge."

Defendant replied that the award of item 1 depended on certain contingencies and that it would decide whether or not to make it within the acceptance period contained in plaintiff's bid.

Plaintiff not having consented to defendant's proffered award of a contract varying from that on which plaintiff had bid, defendant withdrew its offer to award a contract covering only items 2, 3 and 4, and advised plaintiff that within the sixty-day acceptance period it would either accept its bid as made or reject it. The defendant never accepted plaintiff's bid.

We are unable to understand plaintiff's argument that the defendant's words and deeds constituted an acceptance. There was never an acceptance of plaintiff's offer. Plaintiff's offer was to do the entire work; it never offered to do only a part of the work. The invitation stated that one contract would cover all three items 1, 2, and 3, and possibly 4, and this is what plaintiff was asked to bid on. It was not asked to submit a bid on items 2, 3 and 4, eliminating item 1, and it did not do so.

Defendant could not have required plaintiff to perform only items 2, 3 and 4,

when it had asked for bids on 1, 2, 3 and 4, and plaintiff had bid on all four items. When defendant asked plaintiff to do so, plaintiff insisted it had bid on all four items and insisted on a contract for all four.

■ When plaintiff failed to accept defendant's offer of a contract for items 2, 3 and 4 only, defendant withdrew it and notified plaintiff it would either accept or reject its bid as made. This was never done. No contract, therefore, resulted.

There is, however, this feature to the case on which we have not touched and which was not dealt with by the parties. On the day before defendant wired plaintiff withdrawing its partial award, plaintiff wrote defendant, continuing to protest that the award did not conform to its bid, but the letter concluded:

"We request that the formal notice of award and copies of Contract be forwarded, corrected or otherwise. Upon receipt of which, we will furnish the required Bond."

By this plaintiff apparently meant to say that if it could not be awarded a contract in conformity to its bid, it would accept one in accord with defendant's partial award.

■ If this letter had been received by defendant before it sent its telegram on January 17 withdrawing its award, defendant would have been bound on it, but it was not received until the next day. Not having been received before withdrawal of the award, no contract resulted. See Rhode Island Tool Co. v. United States, 128 F.Supp. 417; 130 Ct. Cls. 698; Dick v. United States, 82 F. Supp. 326, 113 Ct.Cls. 94.

Defendant's motion for summary judgment is granted, and plaintiff's petition will be dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.